

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 24, 2024.**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| SANDRA ROJAS MIRELES, | § § § | CASE NO. 22-50970-MMP |
| DEBTOR. | § § § | CHAPTER 13 |
| MARY K. VIEGELAHN, CHAPTER 13 TRUSTEE, | § § § § | |
| PLAINTIFF, | § § | |
| v. | § § § | ADVERSARY NO. 23-05046-MMP |
| TMX CREDIT, INC., | § § § | |
| DEFENDANT. | § | |

1

<u>OPINION</u>

I. **INTRODUCTION**

Before the Court are cross-motions for summary judgment: Plaintiff's *Amended Motion for Entry of Summary Judgment Pursuant to Fed.R. Bankr.P. 7056* ("**Trustee's Motion**," ECF No. 22)[1] and *TMX Credit, Inc.'s Motion for Summary Judgment* ("**TMX's Motion**," ECF No. 24). Both parties seek to determine the validity of a security interest held by TMX Credit, Inc. ("**TMX**") on the Debtor's vehicle.

II. **JURISDICTION**

The Court has jurisdiction under 28 U.S.C. § 1334, and the Standing Order of Reference of the United States District Court for the Western District of Texas, dated October 4, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Venue is proper under 28 U.S.C. § 1409. Plaintiff has consented to the entry of final orders and a judgment by this Court in this adversary proceeding. ECF No. 12. Defendant's Answer contains consent to the Court's entry of final judgments, subject only to Defendant's denied jurisdictional claims in its Motion to Dismiss.[2] ECF Nos. 5, 14, and 16.

III. **BACKGROUND**

The basic facts are uncontested, even though the parties characterize the same facts differently. The Debtor entered into a Loan Agreement, Promissory Note, and Security Agreement with TMX ("**First Loan**"). The First Loan lent the Debtor $2,033.00 at an interest rate of 144.76% per year (as listed on the security agreement), with TMX retaining a security interest in the

---

[1] "ECF" denotes the electronic filing number.
[2] To the extent both parties have not consented to this Court's entry of a final judgment, this Opinion represents the Court's findings of fact and conclusions of law, which are subject to de novo review.

2

Debtor's vehicle, a 2007 Dodge Ram. The First Loan's maturity date was approximately one month after the funds were advanced. The documents for the First Loan did not contain a "future advance" or "dragnet" clause.[3] The next day, the Texas Department of Motor Vehicles issued a certificate of title covering the Debtor's Dodge Ram, which identified TMX as a lienholder and identified the "lien date" as April 11, 2017 (reflecting the date of the First Loan).

Over the course of the following year, the Debtor entered into eight more sets of financing documents with TMX (collectively, the "**Subsequent Loans**"). Each of the Subsequent Loans involved a new set of financing documents with TMX, had interest rates around 140% annually, matured roughly one month after the loan date, and satisfied the balance of the immediately preceding loan. Some of the Subsequent Loans advanced the Debtor new money: for example, the second of the Subsequent Loans extended the Debtor $3,285.00 against the $2,033.00 balance of the First Loan, leaving the Debtor with $1,252.00 in additional funds.

After it advanced each of the Subsequent Loans, TMX never filed new loan documents with the Texas Department of Motor Vehicles seeking to obtain a new lien notation on the Dodge Ram's certificate of title, which would have again identified TMX as a lienholder, but would have also identified a *new* lien date, corresponding to the date of each Subsequent Loan.

On September 1, 2022, the Debtor filed a chapter 13 bankruptcy in the Western District of Texas (Case No. 22-50970, the "**Main Case**"). Main Case, ECF No. 1. The Trustee subsequently initiated this adversary proceeding, and both parties moved for summary judgment. The Trustee asserts TMX's failure, for each Subsequent Loan, to record its security interest on the Dodge Ram

---

[3] A "future advance" or "dragnet" clause allows a creditor's existing, perfected security agreement to secure a creditor's future advances of funds to a debtor, without requiring such creditor to re-perfect its security interest in those future advances.

3

certificate of title renders TMX's security interest unperfected, and that the Trustee may avoid the security interest created by the Subsequent Loans under § 544(a)(1).[4] Importantly, the Trustee asserts the security interest created by the First Loan was extinguished when TMX funded the second loan and used part of the second loan's proceeds to satisfy and extinguish the First Loan and its security interest; as a result, none of the Subsequent Loans are secured.

TMX contends that there was no need to perfect the second or Subsequent Loans, because each of the Subsequent Loans merely "extended and renewed" or "refinanced" the First Loan, and that the security interest created on the Dodge Ram certificate of title remains in effect as originally perfected. TMX also argues that because the Debtor's confirmed chapter 13 Plan (Main Case, ECF Nos. 4 and 18) listed TMX as a "secured creditor," res judicata prevents the Trustee from challenging its secured status. Finally, TMX argues that because the Trustee allowed the Debtor to remove the car from the bankruptcy estate via exemption, this security interest avoidance action is not for the benefit of the estate, depriving the Trustee of the standing necessary to bring an avoidance action.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). Both parties concede that there is no genuine issue of material fact, and instead each argue that they are entitled to judgment as a matter of law based on the law of perfection. If the Trustee can show that TMX's security interest was unperfected at the time of the bankruptcy filing, and if the Trustee has standing to avoid the security interest, the Trustee is then entitled to judgment as a

---

[4] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

matter of law. If TMX, however, can show that its Second Loan merely extended and renewed First Loan, such that TMX did not need to record the Second Loan security interest on the Dodge Ram's certificate of title to maintain a perfected security interest (created by the First Loan security agreement), or show that the Trustee lacks standing to bring this claim, it is entitled to judgment as a matter of law.

V. **D**ISCUSSION

The Trustee initiated this adversary proceeding simultaneously with and parallel to *Viegelahn v. TitleMax of Texas, Inc. (In re Carraman)* (Adversary Proceeding No. 23-05045-mmp) ("**Parallel Adversary**"). While the debtors are different in each adversary proceeding, the legal issues and the parties are virtually the same—the same chapter 13 Trustee just represents different bankruptcy estates against TitleMax of Texas, Inc. in the Parallel Adversary and against TMX Credit, Inc. in this adversary.[5] The security agreements in both adversaries are identical except as to the amounts financed, the number of subsequent loans, and the interest rates. The cross-motions for summary judgment in this adversary differ from the cross-motions in the Parallel Case only in certain facts unimportant to the Court's analysis: TMX made nine loans to the Debtor here, while TitleMax of Texas, Inc. made two to the Debtors in the Parallel Adversary. Because the contested issues of law are identical, the Trustee, TMX, and TitleMax of Texas, Inc. argued their motions for summary judgment for both adversaries at the same hearing. ECF No. 23; Parallel Adversary ECF No. 22.

---

[5] TMX Credit, Inc. and TitleMax of Texas appear to be related entities and hold the same type of interest against the respective debtors in each action. Both entities share the same address and attorney.

Thus, the Court's reasoning in its Opinion[6] in the Parallel Adversary ("**Parallel Opinion**," attached to this opinion as **Exhibit A**) applies to this adversary as well. Accordingly, for the same reasons articulated in the Parallel Opinion, the Court will grant the Trustee's Motion and deny TMX's Motion.

### a. TMX'S SECURITY INTEREST IS UNPERFECTED AND AVOIDABLE

The Court adopts its reasoning in the Parallel Opinion and holds that TMX's security interest was unperfected after TMX failed to re-title upon making the first Subsequent Loan (i.e., the second overall loan). The Trustee may avoid TMX's security interest under § 544(a)(1).

#### i. THE FIRST LOAN WAS SATISFIED BY THE SUBSEQUENT LOANS

The first of the Subsequent Loans satisfied and extinguished the First Loan for the reasons articulated in this Court's Parallel Opinion.

#### ii. TMX'S SECURITY AGREEMENT HAS NO FUTURE ADVANCES CLAUSE

The parties concede that TMX's security agreements contained no explicit future advances clause.

##### 1. NO FUTURE ADVANCES CLAUSE WAS IMPLIED

Each of TMX's security agreements contained this provision, which is identical to the one used in the security agreements in the Parallel Case:

> "Lender may agree to refinance this Loan in its sole discretion. If [Credit Services Organization ("**CSO**")][7] agrees to help me *refinance* my loan from Lender, I must enter into a new CSO Contract with CSO and pay an additional CSO Fee to CSO for its services provided to me in connection with *refinancing* the Loan. As a condition to any *refinance*, I must pay to Lender the minimum *refinance* payment amount, satisfy the Lender's other underwriting criteria for

---

[6] Case No. 23-05045, ECF No. 37.
[7] A credit services organization, or CSO, is defined under the Texas Finance Code as an entity that (i) helps improve a consumer's credit history or rating, (ii) extends consumer credit to a borrower, or (iii) gives advice or assistance regarding (i) or (ii). Tex. Fin. Code § 393.001(3).

6

*refinances* and enter into a new *Loan Agreement, Promissory Note and Security Agreement with Lender*."

ECF No. 24 at 7 (emphasis added) ("**New Document Provision**").

For the reasons articulated in the Parallel Opinion, the Court will not treat the New Document Provision as an implied future advances clause.

### 2. THE SUBSEQUENT LOANS WERE FUTURE ADVANCES

For the reasons articulated in the Parallel Opinion, the Court finds that each of the Subsequent Loans was a future advance. Thus, without a valid future advances clause, TMX's security interest did not automatically perfect when it made any of the Subsequent Loans.

### iii. TMX WAS SEPARATELY REQUIRED UNDER TCOTA TO RE-PERFECT ITS SECURITY INTEREST BY RE-TITLING

For the reasons articulated in its Parallel Opinion, the Court finds that TMX was required to re-title under the Texas Certificate of Title Act ("**TCOTA**") when it made the Subsequent Loans to keep its security interest perfected.

### 1. CLARK CONTRACTING DOES NOT APPLY

For the reasons articulated in its Parallel Opinion, the Court finds that *Wells Fargo Equip, Fin. v. Rodriguez (In re Clark Contr. Servs.)*, 438 B.R. 913 (W.D. Tex. 2010) does not apply here to make TCOTA's re-titling requirement optional.

### 2. THE PURPOSE OF THE RE-TITLING REQUIREMENT

The Court adopts its reasoning as to the purpose of TCOTA's re-titling requirement articulated in its Parallel Opinion.

7

b. **THE PLAN IS NOT RES JUDICATA AS TO THE TRUSTEE'S CLAIM**

For similar reasons articulated in its Parallel Opinion, the Court finds that the Trustee is not barred by res judicata from bringing its claim to avoid TMX's security interest. In a similar manner to the Parallel Adversary's main bankruptcy case, the Trustee filed an objection to TMX's claim pre-confirmation.[8] The objection was granted post-confirmation,[9] after which TMX filed a motion to reconsider, which was also granted.[10] Although the Trustee's objection was later denied, at the time of confirmation the Trustee *had already* brought an action to avoid TMX's security interest. Although that action was not granted pre-confirmation as it was in the Parallel Adversary, the Trustee had raised the avoidance issue pre-confirmation in the same way as the Parallel Adversary, and there was similarly nothing left for the Trustee to avoid. For these reasons, the rationale articulated in the Parallel Opinion applies equally in this adversary, and the Debtor's confirmed chapter 13 plan is not res judicata as to the Trustee's claim.

c. **THE TRUSTEE HAS STANDING TO BRING THE SECURITY INTEREST AVOIDANCE CLAIM**

For the reasons articulated in its Parallel Opinion, the Court finds that the Trustee has standing to bring its claim to avoid TMX's security interest. Similar to the Parallel Adversary, the Debtor exempted their interest in the Dodge Ram on their Schedule C.[11] But, because property of the estate is defined at the time of filing for purposes of § 551, the Debtor's later exemption of the Dodge Ram does not prevent the Trustee from avoiding TMX's lien "for the benefit of the estate." For these reasons, the Trustee has standing to bring the avoidance claim.

---

[8] Main Case ECF No. 17.
[9] Main Case ECF No. 20.
[10] Main Case ECF No. 23.
[11] Main Case ECF No. 1, at 16.

8

## VI. CONCLUSION

For all these reasons, and the reasons articulated in its Parallel Opinion, the Court will **DENY** TMX's Motion for Summary Judgment and **GRANT** the Trustee's Motion for Summary Judgment. The Court will enter a separate Judgment consistent with this Opinion.

# # #

# **<u>Exhibit A</u>**

Opinion in Case No. 23-05045 (*Viegelahn v. TitleMax of Texas, Inc. (In re Carraman)*),

ECF No. 37